MAX L. LIEBERMAN & ASSOCIATES, P.C.
Max L. Lieberman, Esquire
Attorney I.D. No. 15344
591 Skippack Pike, Suite 400
Blue Bell, PA 19422-2160
(610) 397-1820

-and-

POLSINELLI PC
Aaron C. Jackson, Esq. (MO #59392)
Kelsey E. Hodgdon, Esq. (MO #70994)
900 W. 48th Place, Ste. 900
Kansas City, MO  64112
(816) 360-4277

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2020-MKST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-MKST, THE RR INTEREST OWNER AND THE FUTURE ADVANCE LENDER, | ) ) ) ) ) ) ) ) ) ) | Case No.: |
| *Plaintiff,* | ) ) ) |  |
| vs | ) ) ) |  |
| NG 1500 MARKET ST. LLC, | ) ) ) |  |
| *Defendant.* | ) |  |

### COMPLAINT

Plaintiff Wells Fargo Bank, National Association, as Trustee, for the benefit of registered

holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2020-MKST Commercial

Mortgage Pass-Through Certificates, Series 2020-MKST, the RR Interest Owner and the Future

87212001.5

Advance Lender ("**Lender**"), by its undersigned counsel, states as follows against Defendant NG 1500 Market St. LLC ("**Borrower**").

### Introduction and Diversity Jurisdiction

1.    This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

2.    Lender is a trust that has elected to be treated as a real estate mortgage investment conduit ("**REMIC**") under the Internal Revenue Code of 1986.

3.    For purposes of diversity jurisdiction, a REMIC trust has the citizenship of its trustee. *See U.S. Bank Nat'l Ass'n v. DRG Crums Mill RI, LLC*, No. CIV.A. 3:12-1632, 2013 WL 4500655, at \*5 (M.D. Pa. Aug. 21, 2013); *Wells Fargo Bank, N.A. v. Mitchell's Park, LLC*, 615 F. App'x 561, 563-64 (11th Cir. 2015); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 470 (S.D.N.Y. 2001); *Wells Fargo Bank, N.A., Tr. v. Konover*, No. 3:05 CV 1924 (CFD), 2009 WL 2710229, at \*4 (D. Conn. Aug. 21, 2009), *aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015); *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204 FB, 2012 WL 2529196, at \*4-5 (E.D.N.Y. June 29, 2012).

4.    Wells Fargo Bank, National Association ("**Wells Fargo**") is the Trustee of Lender.  Wells Fargo is a national bank organized under federal law and has its main office in Sioux Falls, South Dakota.

5.    Pursuant to 28 U.S.C. § 1348, a national bank is a citizen of the state in which it is located.  Under *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), a national banking association is a citizen of the state where the bank has its main office.

6.    Thus, for purposes of diversity jurisdiction, Lender is a citizen of <u>South Dakota</u>.

87212001.5

7.     Borrower is a Delaware limited liability company and has the citizenship of its members. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

8.     The sole member of Borrower is Center Square Ventures IV LLC.

9.     The sole member of Center Square Ventures IV LLC is Center Square Ventures III LLC.

10.    The sole member of Center Square Ventures III LLC is Center Square Ventures II LLC.

11.    The sole member of Center Square Ventures II LLC is Center Square Ventures I LLC.

12.    The members of Center Square Ventures I LLC are (i) 1500 Market Street Investors LLC and (ii) WCP Center Square Ventures LLC.

13.    The members of 1500 Market Street Investors LLC are (i) Elie Schwartz and (ii) Simon Singer.

14.    The members of 1500 Market Street Investors LLC have citizenship as follows:

    i.     Elie Schwartz – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction; and

    ii.    Simon Singer – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction.

15.    The members of WCP Center Square Ventures LLC are (i) Robert Toan, (ii) Michael Gontar, (iii) Stanislav Tenenbayev, (iv) Ibis Investment I LLC, (v) Manhar Khanna, (vi) David Tipple, (vii) Peltown Mgmt Ventures LLC, (viii) Jeanine MacFadyen, (ix) Sarah Cotton, (x) Joe Cipolla, (xi) Thana Al-Mufarrej, (xii) Anna Maslyanskaya, (xiii) Souhailah Muslih, (xiv) Lindsey Chasteen, (xv) Christina Emin, (xvi) Anthony Barbuto, and (xvii) Tanya Kalinskiy.

16.    The members of WCP Center Square Ventures LLC have citizenship as follows:

87212001.5

i.      Robert Toan – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction;

ii.     Michael Gontar – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction;

iii.    Stanislav Tenenbayev – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction;

iv.     Manhar Khanna – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction;

v.      Jeanine MacFadyen – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction;

vi.     Thana Al-Mufarrej – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction;

vii.    Anna Maslyanskaya – <u>New York</u> and thus diverse from Lender for purposes of diversity jurisdiction;

viii.   David Tipple – Upon Lender's best information and belief, <u>not South Dakota</u> and thus diverse from Lender for purposes of diversity jurisdiction;

ix.     Sarah Cotton – Upon Lender's best information and belief, <u>not South Dakota</u> and thus diverse from Lender for purposes of diversity jurisdiction;

x.      Joe Cipolla – Upon Lender's best information and belief, <u>not South Dakota</u> and thus diverse from Lender for purposes of diversity jurisdiction;

xi.     Souhailah Muslih – Upon Lender's best information and belief, <u>not South Dakota</u> and thus diverse from Lender for purposes of diversity jurisdiction;

xii.    Lindsey Chasteen – Upon Lender's best information and belief, <u>not South Dakota</u> and thus diverse from Lender for purposes of diversity jurisdiction;

xiii.   Christina Emin – Upon Lender's best information and belief, <u>not South Dakota</u> and thus diverse from Lender for purposes of diversity jurisdiction;

xiv.   Anthony Barbuto – Upon Lender's best information and belief, not South Dakota and thus diverse from Lender for purposes of diversity jurisdiction;

xv.   Tanya Kalinskiy – Upon Lender's best information and belief, not South Dakota and thus diverse from Lender for purposes of diversity jurisdiction;

xvi.   Ibis Investment I LLC – Upon Lender's best information and belief, none of the ultimate owners are citizens of South Dakota and thus diverse from Lender for purposes of diversity jurisdiction; and

xvii.   Peltown Mgmt Ventures LLC – Upon Lender's best information and belief, none of the ultimate owners are citizens of South Dakota and thus diverse from Lender for purposes of diversity jurisdiction.

17.   Thus, for purposes of diversity jurisdiction, Borrower is a citizen of New York and, upon Lender's best information and belief, not a citizen of South Dakota.[1]

18.   Accordingly, upon Lender's best information and belief, there is complete diversity between Lender and Borrower.

19.   The amount in controversy exceeds the sum of $75,000.00.

20.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

---

[1] Lender has made a good-faith and reasonable inquiry as to Borrower's citizenship, and Lender's best information and belief is that none of Borrower's ultimate owners is a citizen of South Dakota. Out of respect for the integrity of this Court's jurisdiction, to the extent the Court so desires or orders, or to the extent that Borrower contests the issue of complete diversity, Lender is willing to engage in limited discovery regarding the citizenship of David Tipple, Sarah Cotton, Joe Cipolla, Souhailah Muslih, Lindsey Chasteen, Christina Emin, Anthony Barbuto, Tanya Kalinskiy, Ibis Investment I LLC, and Peltown Mgmt Ventures LLC, in order to ensure that complete diversity exists among Lender and Borrower. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015); *First Invs. Nevada Realty, LLC v. EIS, Inc.*, 536 F. Supp. 3d 9, 11–12 (E.D. Pa. 2021).

5

**The Loan Transaction**

21.      On or about December 6, 2019, JPMorgan Chase Bank, National Association ("**Original Lender**") made a commercial mortgage loan to Borrower in the amount of $388,000,000.00 (the "**Loan**").

22.      In connection with the Loan, Borrower and Original Lender executed that certain Loan Agreement dated as of December 6, 2019 (as at any time modified, the "**Loan Agreement**").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

23.      In connection with the Loan, Borrower signed and delivered to Original Lender (i) that certain Promissory Note A-1 dated as of December 6, 2019, in the original principal amount of $368,000,000.00 (as at any time modified, "**Note A-1**"); and (ii) that certain Promissory Note A-2 dated as of December 6, 2019, in the original principal amount of $20,000,000.00 (as at any time modified, "**Note A-2**").  A true and correct copy of Note A-1 is attached hereto as **Exhibit B**; a true and correct copy of Note A-2 is attached hereto as **Exhibit C**.

24.      In connection with the Loan, Borrower signed and delivered to and for the benefit of Original Lender that certain Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated to be effective as of December 6, 2019 (as at any time modified, the "**Mortgage**"), which encumbers certain real property, and improvements thereon, located in Philadelphia County and legally described as follows:

87212001.5

All that certain lot or piece of ground with buildings and improvements thereon erected, situate in the 8th Ward of the City of Philadelphia and described as follows, to wit:

BEGINNING at a point of intersection formed by the Westerly side of 15th Street (variable width) and the Southerly side of Market Street (100 feet wide); thence extending Southwardly along the said Westerly side of 15th Street the distance of 265 feet 0 inches to a point on the Northeasterly end of a corner cut off which connects the said Westerly side of 15th Street and the Northerly side of Ranstead Street (20 feet wide), said point also being on the Northwesterly side of an easement for cutback which easement for cutback applies only to certain land and/or space between an elevation of +/- 38.50 and an elevation of +/- 68.50; thence Southwardly along the Westerly side of said 15th Street extended and along the Easterly side of said Easement for cutback 21 feet 0 inches to a point on the Northerly side of said Ranstead Street extended and on the Southerly side of said Easement for cutback; thence Westwardly along the Northerly side of said Ranstead Street extended and along the Southerly side of said Easement for cutback 30 feet 0 inches to a point on the Southwesterly end of said corner cut off and on the Northwesterly side of said Easement for cutback; thence Westwardly along the Northerly side of said Ranstead Street (part 20 feet wide and part 30 feet wide) 346 feet 0 inches to a point on the Easterly side of 16th Street (70 feet wide); thence Northwardly along the said Easterly side of 16th Street 286 feet 0 inches to a point on the said Southerly side of Market Street; thence Eastwardly along the said Southerly side of Market Street 376 feet 0 inches to a point on the said Westerly side of 15th Street, being the first mentioned point and place of beginning.

LESS AND EXCEPT the portion of the herein before described premises by Deed of Dedication from the Redevelopment Authority of the City of Philadelphia to the City of Philadelphia dated June 20, 1969 and recorded in the Department of Records in and for the City of Philadelphia in Deed for J.R.S. No. 456, Page 258 &c.

BEING the same premises which EQC Operating Trust, a Maryland real estate investment trust formerly known as Hub Properties Trust by Special Warranty Deed dated 06/28/2017 and recorded 07/18/2017 in the Office of the Recorder of Deeds in and for the County of Philadelphia as Document No. 53239762, granted and conveyed unto NG 1500 Market St. LLC, a Delaware limited liability company.

NOTE FOR INFORMATION:  Being Parcel No. 88-3320000, of the City of Philadelphia, County of Philadelphia, State of Pennsylvania.

> Address:      1500 Market Street
>               Philadelphia, PA 19102

The Mortgage also encumbers certain personal property of Borrower used in connection with conducting business at the Property.  The real and personal property described as collateral in the Mortgage is sometimes hereinafter referred to collectively as the "**Property.**"

25.     The Mortgage was recorded with the Department of Records of Philadelphia County, Pennsylvania (the "**Recorder**") on December 12, 2019, as Document No. 53604614.  A true and correct copy of the Mortgage, as recorded, is attached hereto as **Exhibit D**.

7

26.      After origination of the Loan, the original principal balance of the Loan was increased from $388,000,000.00 to $390,000,000.00, as evidenced by (i) that certain Amended and Restated Promissory Note A-2 dated as December 27, 2019 (the "**Amended Note A-2**"); (ii) that certain First Amendment to Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture filing dated to be effective as of December 31, 2019, and recorded with the Recorder on January 7, 2020, as Document No. 53615245 (the "**Amended Mortgage**"); and (iii) that certain Omnibus Amendment to Loan Documents and Reaffirmation Agreement dated as of December 27, 2019 (the "**Omnibus Amendment**").

27.      A true and correct copy of the Amended Note A-2 is attached hereto as **Exhibit E**; a true and correct copy of the Amended Mortgage, as recorded, is attached hereto as **Exhibit F**; a true and correct copy of the Omnibus Amendment is attached hereto as **Exhibit G**.

28.      The Loan Agreement, Note A-1, Note A-2, Mortgage, Amended Note A-2, Amended Mortgage, Omnibus Amendment, and all other documents further evidencing, securing, or executed in connection with the indebtedness owed under the Loan are collectively referred to herein as the "**Loan Documents**."

29.      Wells Fargo Bank, National Association, as Trustee, for the benefit of registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2020-MKST Commercial Mortgage Pass-Through Certificates, Series 2020-MKST and the RR Interest Owner ("**Note A-1 Holder**"), is the current owner and holder of Note A-1, as evidenced by that certain Allonge dated to be effective as of February 19, 2020.  A true and correct copy of the Allonge is affixed to Note A-1 as reflected on Exhibit "B."

30.      Original Lender is the current owner and holder of Note A-2 and Amended Note A-2 (in such capacity hereinafter the "**Note A-2 Holder**").

8

87212001.5

31.     Lender is the current mortgagee under the Mortgage, as evidenced by that certain Assignment of Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated to be effective as of February 19, 2020, and recorded with the Recorder on April 30, 2020, as Document No. 53662686.  A true and correct copy of the assignment of Mortgage, as recorded, is attached hereto as **Exhibit H**.

32.     Pursuant to an agreement between Note A-1 Holder and Note A-2 Holder, Note A-1 Holder has sole and exclusive authority with respect to the administration of, and exercise of rights and remedies with respect to, the Loan and has the right to bring this action on behalf of Note A-1 Holder and Note A-2 Holder.  The agreement between Note A-1 Holder and Note A-2 Holder states in pertinent part:

> [Note A-1 Holder] shall have the sole and exclusive authority with respect to the administration of, and exercise of rights and remedies with respect to, the Mortgage Loan, including, without limitation, the sole authority to modify or waive any of the terms of the Mortgage Loan Documents or consent to any action or failure to act by the Mortgage Loan Borrower or any other party to the Mortgage Loan Documents, call or waive any Event of Default, accelerate the Mortgage Loan or institute any foreclosure action or other remedy … . … [Note A-2 Holder] agrees that it shall have no right to, and hereby presently and irrevocably assigns and conveys to [Note A-1 Holder] (or the Master Servicer, the Special Servicer or the Trustee acting on behalf of [Note A-1 Holder]) the rights, if any, that [Note A-2 Holder] has to, (i) call or cause [Note A-1 Holder] to call an Event of Default under the Mortgage Loan, or (ii) exercise any remedies with respect to the Mortgage Loan or the Mortgage Loan Borrower … .

### Borrower's Default under the Loan Documents

33.     Note A-1 and Amended Note A-2 matured by their terms on December 9, 2022.

34.     Borrower has failed to pay the matured indebtedness in full, which failure constitutes an Event of Default (as defined in the Loan Agreement) under the Loan Documents.

87212001.5

35.     By letter dated December 12, 2022, Lender provided written notice to Borrower of Borrower's defaults under the Loan Documents.  A true and correct copy of the December 12th letter is attached hereto as **Exhibit I**.

36.     Borrower has failed to pay the matured indebtedness in full and remains in default under the Loan Documents.

37.     Upon an Event of Default, the Loan Documents provide that Borrower shall be liable for all costs incurred for collecting, securing, or attempting to collect or secure any amounts due under the Loan Documents, including reasonable attorneys' fees, fees charged by Lender's loan servicers, and other costs and expenses incurred by Lender.

38.     As of January 6, 2023, the following amounts were due and owing to Lender under the Loan Documents: (a) principal in the amount of $375,588,868.19; (b) interest in the amount of $1,851,820.06; (c) default interest in the amount of $1,126,766.61; (d) late charges in the amount of $1,210.70; (e) reconveyance fee in the amount of $5,000.00; (f) protective property advances in the amount of $17,090.00; (g) interest on protective property advances in the amount of $723.41; (h) other fees in the amount of 750.00; and (i) any and all fees and costs incurred by Lender, both to date and hereafter, in connection with the collection of the amounts due and owing under the Loan Documents; and any other amounts due and owing under the Loan Documents (such amounts being referred to herein as the "**Indebtedness**").

### Right to Foreclose

39.     Under Section 7.1(h) of the Mortgage, upon an Event of Default, Lender (or a receiver that Lender seeks to have appointed) is entitled to enter upon and take possession and control of the Property, manage and operate the Property, and collect and receive all rents, issues, and profits from the Property.

87212001.5

40.     Accordingly, as a result of Borrower's defaults under the Loan Documents, Lender is entitled to an order directing all rents, issues, and profits from the Property be remitted to Lender to the exclusion of Borrower, in accordance with the terms of the Loan Documents.

41.     Further, under Section 7.1(b) of the Mortgage, upon an Event of Default, Lender has the right to institute a proceeding for foreclosure.

42.     Accordingly, as a result of Borrower's defaults under the Loan Documents, Lender is entitled to an Order from the Court that the Mortgage be foreclosed.

43.     Lender reserves any and all collection or other rights to the extent authorized by the Loan Documents against any person or entity in association with the Loan, or the Property, including its right to collect a deficiency judgment, to proceed against any guarantor, and to otherwise enforce recourse liabilities of Borrower or any guarantor to the extent provided in the Loan Documents.

### Count I – Foreclosure

44.     Lender incorporates by reference the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

45.     Borrower is in default under the terms of Loan Documents, including the Mortgage.

46.     As a result of Borrower's default, under the Mortgage and applicable law, Lender is entitled to immediate possession of the Property and to an order directing foreclosure of Lender's interest therein.

47.     The interest of Lender in the Property is prior and superior to the interest of Borrower.

87212001.5

48.     Lender is entitled to an order directing all rents, profits, and income from the Property be remitted to Lender in accordance with the terms of the Mortgage and that any such amounts be used to reduce the indebtedness described above.

WHEREFORE, Lender respectfully request that the Court enter judgment in favor of Lender and against Borrower on Count I of the Complaint for foreclosure of the Property as follows:

 A. Recognizing Lender's Mortgage;

 B. Declaring that Lender has a valid and first-priority lien on the Property;

 C. Ordering that Lender has the legal right, and is authorized, to foreclose on the Property:

  (i) in separate parcels or in a single parcel, whichever will in Lender's discretion maximize the value of the Property;

  (ii) subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

  (iii) subject to any state of facts that an accurate survey would show;

  (iv) subject to covenants and restrictions of record, if any; and

  (v) subject to violations, if any, noted by any federal, state, city, town or village agency having authority over the premises;

 D. Declaring that such foreclosure will vest in the purchaser free and clear title to the Property, including free of any and all interests that are or might be asserted by Borrower to this Complaint;

 E. Ordering that Lender has the right to credit bid at such foreclosure sale all or any portion of the Indebtedness;

87212001.5

F.     Ordering and directing that the United States Marshal or any referee appointed in this action foreclose the Property and deliver title to the prevailing bidder via a Marshal's Deed or other deed and/or bill of sale, as appropriate;

G.     Ordering and directing that the proceeds of the sale be applied as follows:

(i)     to payment of the expenses of the sale;

(ii)    to the payment of the Indebtedness owed to Lender;

(iii)   to the payment of foreclosure costs and other accrued costs in connection with the foreclosure;

(iv)    to the payment, at Lender's option, of any real property taxes that may be due and unpaid in connection with the Property;

(v)     to the payment, at Lender's option, of all other assessments against or attributable to the Property; and

(vi)    the surplus, if any, to the payment of debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

H.     Ordering that Borrower has no right of redemption or reinstatement with respect to the Property;

I.      Finding that Lender has reserved its right to collect a deficiency judgment and any and all collection or other rights to the extent authorized by the Loan Documents against any person or entity in association with the Loan, or the Property, including its right to collect a deficiency judgment, to proceed against any guarantor, and to otherwise enforce recourse liabilities of Borrower or any guarantor to the extent provided in the Loan Documents; and

87212001.5

J.      Ordering all further relief that is just, proper, and equitable.


Dated: January 17, 2023

By: /s/ Max L. Lieberman
     Max L. Lieberman

*Attorney for Plaintiff Wells Fargo Bank,
National Association, as Trustee, for the
benefit of registered holders of J.P. Morgan
Chase Commercial Mortgage Securities
Trust 2020-MKST Commercial Mortgage
Pass-Through Certificates, Series 2020-
MKST, the RR Interest Owner and the
Future Advance Lender*

14

87212001.5