UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2020-MKST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-MKST, THE RR INTEREST OWNER AND THE FUTURE ADVANCE LENDER,<br><br>       Plaintiff,<br><br>   v.<br><br>NG 1500 MARKET ST., LLC,<br><br>       Defendant. | Civil Action No.   23-CV-00146-NIQA |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>RECEIVER'S MOTION TO MODIFY THE RECEIVERSHIP ORDER</u>**

CBRE, Inc. in its capacity as receiver (the "**Receiver**") respectfully submits this Memorandum of Law in Support of the Receiver's Motion to Modify the Receivership Order ("**Motion**").

**I.      INTRODUCTION**

This is a mortgage foreclosure action on a high-profile commercial property located at 1500 Market Street, Philadelphia, Pennsylvania (the "**Property**"). On April 14, 2023, the Court appointed the Receiver over the Property pursuant to a stipulated order (the "**Receiver Order**"). [ECF 20]   Under the Receiver Order, the Court granted the Receiver the power to sell the Property upon the request of the Plaintiff Wells Fargo Bank, National Association, as Trustee, for the benefit of registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2020-MKST

Commercial Mortgage Pass-Through Certificates, Series 2020-MKST, the RR Interest Owner and the Future Advance Lender ("**Plaintiff**").  [ECF 20, par. 1(n)]

At the present time, the Plaintiff has not made a final decision about whether to proceed with a sale of the Property through the Receiver though this is expected at some point in the future. Nevertheless, the Receiver now respectfully requests that the Court modify the Receiver Order to enhance the ability of the Receiver to run an effective sale process if and when the Plaintiff requests that a Receiver-led sale process move forward.

Under the Receiver Order, there is a requirement that the Receiver obtain prior Court approval of the terms of any brokerage agreement (the "**Broker Provision**"). [ECF 20, par. 1(n)] The Receiver now asks that the Broker Provision be removed from the Receiver Order for the following reasons.

**First**, the Broker Provision is not needed to protect the integrity of the sale process. The Court already imposed a requirement that the Court approve the terms of any sale of the Property and such Court oversight will ensure the integrity of the sale process. [ECF 20, par. 1(n)] There is no reason for the Court to approve interim steps in the sale process.

**Second**, the Receiver will only select a broker after a competitive bidding process and the Plaintiff's approval. This will ensure the integrity of the selection of the broker.

**Third**, there is a material risk that the Broker Provision will damage the sale process. In marketing a high-profile property like the one here, it is imperative that the broker control the initial narrative of the marketing and permit the *Green Street News* to be the first news source to break the story of the sale. The *Green Street News* publishes a weekly news alert to over 40,000 real estate professionals and will only publish an article about a new listing if the *Green Street News* is the first to break the story. Herein lies the dilemma facing the Receiver. If the Receiver is required to file a motion to obtain Court approval of all brokerage terms including the list price,

2

it is inevitable that a local Philadelphia media source will be the first to publish a piece about the imminent sale of the Property, and the critical and free advertising to 40,000 real estate professionals through the *Green Street News* will be lost. The Receiver does not want to lose this valuable and free advertising.

**Fourth**, the fair market value of the Property is currently well below the amount of the secured debt. This means that the only stakeholder to have a recovery here is the Plaintiff. The Plaintiff is a strong supporter of this Motion, and the views of the Plaintiff should be given great weight.

For these and other reasons discussed in more detail below, the Receiver respectfully requests that the Court grant the Motion.

### III. FACTUAL BACKGROUND

The Plaintiff commenced a foreclosure action on the Property. The Property is one of the larger commercial buildings in the Center City of Philadelphia. [Kranzel Affidavit][1] The Property contains approximately 2.2 million square feet of leasable space. [*Id.*] The Property is located on Market Street between 15th and 16th Streets and is across the street from City Hall. [*Id.*] The balance due on the loan in this case exceeds $375 million. [*Id.*]

On April 14, 2023, the Court entered the Receiver Order. The Receiver Order contains the following provision:

> [the Receiver shall] if directed by the Lender, engage a sales broker and sell the Property (in each case with the prior approval of the Court and on such terms as may be set out in a separate and subsequent order of the Court, it being understood that nothing in this Order shall constitute a waiver of Borrower's right to raise objections to any motion seeking Court approval of any such separate and subsequent order)

---

[1] The "**Kranzel Affidavit**" is the affidavit of Jerome Kranzel, Senior Vice President of the commercial markets group of CBRE, Inc. sworn to on December 30, 2024.

[ECF 20, par. 1(n)]   At the present time, the Receiver has not engaged any broker, and the Plaintiff has not requested that a Receiver-led sale process move forward.  However, it is very likely that the Plaintiff will at some point request that the Receiver sale process move forward.  [*Id.*]

Regardless of who is selected as broker, one of the most important moments in the marketing and sale of a significant commercial building such as the Property is the messaging to the market immediately after the Property is listed.  [*Id.*]  The first impression of buyers is vital to the success of the marketing process.  [*Id.*]  Accordingly, it is imperative that in the first few weeks of the marketing process, the broker deliver a strong, clear and accurate message to potential buyers.  [*Id.*]

In addition, it is critical that *Green Street News* publish an article about the listing. [*Id.*] *Green Street News* publishes a weekly Real Estate Alert which is viewed by over 40,000 users in the real estate industry.  [*Id.*]  *Green Street News* will interview the listing broker immediately after a listing goes live and within days publish a story based on that interview.  [*Id.*]  The article is always well informed because it is based on solid and accurate information from the listing broker.  [*Id.*]  The article then becomes free (and accurate) advertising to more than 40,000 key players in the commercial real estate world.  [*Id.*]

*Green Street News* accurately touts itself as the first news alert for major commercial real estate listings in the United States.  [*Id.*]  For that reason, *Green Street News* will pass on an article if *Green Street News* is not the first to report on a new listing.   [*Id.*]  If the *Green Street News* passes on an article involving the Property, the impact on the sales process could be devastating.  The loss in market price could run in the tens of millions of dollars.  [*Id.*]

## IV.  ARGUMENT

### A.  The Receiver Order Should Be Modified To Remove The Broker Provision.

District Courts have broad powers and wide discretion to determine appropriate relief in a receivership matter. See, *Lundy v. Hochberg*, 79 F. App'x 503, 505 (3d Cir. 2003), *citing Securities and Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (observing that the district court "has broad powers and wide discretion to determine relief in an equity receivership"); *SEC v. Black*, 163 F.3d 188, 199 (3d Cir. 1998) (courts have wide discretion in receivership matters); *CFTC v. Eustace*, No. 05-2973, at *5 (E.D. Pa. Feb. 15, 2008), *citing FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992) ("one common thread keeps emerging out of the cases involving equity receiverships—that is, a district court has extremely broad discretion in supervising an equity receivership"). A court's powers to administer receivership assets derives from the court's inherent power to exercise jurisdiction over assets taken into the receivership and not by the terms of private contracts. *SEC v. Path Am., LLC*, 2016 Us Dist Lexis 93364, 2016 WL 2865919, at *4 (W.D. Wash. July 15, 2016).

The Receiver is an "arm of the court" requiring the Receiver to act impartially with respect to all interested parties. *Trinh v. Fineman*, 9 F.4th 235, 238 (3d Cir. 2021) (a receiver functions as an "arm of the court"); *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 991 (2d Cir. 1946) (receiver is required to act impartially). A primary purpose of equity receiverships is to promote orderly and efficient administration of the estate for the benefit of creditors. *Marion v. TDI Inc.*, 591 F.3d 137, 148 (3d Cir. 2010). From a general perspective, courts appoint receivers in litigation to take charge of property at issue, and a receiver "has no powers except such as are conferred upon [it] by the order of his appointment and the course and practice of the court." *Trinh v. Fineman*, at 238 citing *Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 371, 28 S. Ct. 406, 52 L.Ed. 528 (1908). For that reason, the Supreme Court has observed, the appointment of a receiver causes the

property at issue in the litigation to "pass[] into the custody of the law, and thenceforward its administration [is] wholly under the control of the court by its officer or creature, the receiver." *Id*.

A receiver has a duty to protect and maximize the recovery from assets under the receiver's care. *CFTC v. Eustace*, No. 05-2973 (E.D. Pa. May 3, 2007) (duty to realize largest amount for the assets); *United States v. Ianniello*, 824 F.2d 203, 205 (2d Cir. 1987) (duty to protect the assets). On asset administration issues, courts generally defer to the business judgment of receivers. *SEC v. Path Am., LLC*, 2016 U.S. Dist. Lexis 93364, 2016 WL 2865919, at *4 (W.D. Wash. July 15, 2016) citing *Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989).

Here, the Receiver respectfully requests that the Broker Provision should be removed from the Receiver Order for the following reasons.

> (i) **The Broker Provision Is Superfluous And Unnecessary.**

The Broker Provision is not needed. The Court has retained the right to approve the terms of any ultimate sale of the Property and that will ensure the integrity of the sale process. [ECF 20, par. 1(n)]

> (ii) **The Receiver Will Run A Competitive Process For The Selection Of A Broker Which Shall Be Subject To Plaintiff's Scrutiny And Approval.**

The Receiver will run a competitive bidding process among multiple qualified brokers before selecting a broker. Any decision will be subject to the approval of the Plaintiff. All this will ensure the integrity of the selection process.

> (iii) **There Is A Material Risk That The Broker Provision Will Damage the Sale Process.**

The primary driving force behind this Motion is the Receiver's strong view that the Broker Provision will impair the sale process. It is imperative that the first public notice of the sale process come from the *Green Street News*. This publication is the go-to publication for high profile properties such as the Property. The *Green Street News* has an unparalleled subscriber basis of

over 40,000 important real estate professionals. Better yet, the coverage from the *Green Street News* is free. The catch is that the *Green Street News* must be the first to publish news about a new and interesting property up for sale. Unless the *Green Street News* is first to go to print, the *Green Street News* will pass on doing any article about a high-profile property that is going up for sale.

The challenge here is that, under the Receiver Order, the Receiver must seek Court approval of any broker listing agreement before the listing goes live. That makes the news of the listing public before the listing is active. Given the high profile of the Property, there is little doubt that once public, a local media outlet in Philadelphia will publish a story about the listing before the listing goes live. The negative consequences of such premature media stories will risk losing the benefits of an article in the *Green Street News*. While difficult to predict with any certainty how many ponetinal buyers will be lost without an article in the Green Street News, the Receiver rasonably believes the final sale price could be negatively impacted to the tune of millions if not tens of millions of dollars. For these compelling reasons, the Receiver in its business judgment seeks the removal of the Broker Provision from the Receiver Order.

      (iv)    **The Plaintiff, As The Only Stakeholder Which Stands To Have A Recovery, Supports The Motion.**

The alleged secured debt in this case exceeds $375 million. The Receiver is of the view that no sale of the Property will yield a purchase price this high. Therefore, the Plaintiff is the only stakeholder who will receive a recovery out of the sale of the Property. Given this, the Plaintiff gives great weight to the opinions of the Plaintiff concerning the sale process, and the Plaintiff is fully supportive of the Motion.

**WHEREFORE**, the Receiver respectfully requests that the Court grant the Motion and award other and further appropriate relief.

Respectfully submitted,

Dated: January 6, 2025

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Mark Pfeiffer
Mark Pfeiffer (PA ID 76245)
Two Liberty Place
50 S. 16th Street, Ste. 3200
Philadelphia, PA 19102
Tel: (215 665-8700
Fax: (215) 665-8760
Email: mark.pfeiffer@bipc.com

*Attorneys for CBRE, Inc., in its capacity as receiver*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served or caused to be served a true and correct copy of the foregoing document via ECF notification.

Dated: January 6, 2024

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Mark Pfeiffer
Mark Pfeiffer (PA ID 76245)
Two Liberty Place
50 S. 16th Street, Ste. 3200
Philadelphia, PA 19102
Tel: (215 665-8700
Fax: (215) 665-8760
Email: mark.pfeiffer@bipc.com

*Attorneys for CBRE, Inc., in its capacity as receiver*