UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2020-MKST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-MKST, THE RR INTEREST OWNER AND THE FUTURE ADVANCE LENDER,<br><br>      Plaintiff,<br><br>  v.<br><br>NG 1500 MARKET ST., LLC,<br><br>      Defendant | Civil Action No.   23-CV-00146-NIQA |

**RECEIVER'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR CONTEMPT**

CBRE, Inc. in its role as court-appointed receiver and not in its individual capacity, (the "Receiver"), by and through its undersigned counsel, files this Memorandum of Law in support of its Motion for Contempt (the "Motion"), requesting this Court to hold Defendant NG 1500 Market St., LLC ("Defendant"), Nightingale Realty LLC and Nitesky Management LLC, and any officer or employee of the foregoing limited liability companies who actively participated in violating a prior order of this Court, in civil contempt; specifically, for the continued disregard for and failure to comply with the Consent Order Appointing Receiver Pursuant to Motion of Plaintiff, entered by this Court on April 14, 2023 [ECF 20] (the "Receivership Order").  *See* Affidavit of John Svorcek, Real Estate Manager of CBRE, Inc., dated July 15, 2025 and submitted herewith (the "Svorcek Aff."), Ex. A.

## I. INTRODUCTION

1. The Receiver brings the Motion after a prolonged and unsuccessful attempt to have the Defendant return over $800,000 of funds related to the Property (defined below) which were improperly diverted in violation of the Receivership Order.

2. The Receiver, through counsel, has advised the Defendant and its counsel on numerous occasions that, without consensual resolution of the matter, the Receiver would pursue a contempt motion before this Court.

3. To date, Defendant has failed to return any of the funds in dispute.

## II. FACTUAL AND PROCEDURAL BACKGROUND

4. This is a mortgage foreclosure action with respect to commercial property located at 1500 Market Street, Philadelphia, Pennsylvania (the "<u>Property</u>").  (Svorcek Aff., ¶ 3).

5. On April 14, 2023, this Court appointed Receiver over the Property pursuant to the Receivership Order.  (Svorcek Aff., ¶ 5).

6. Paragraph 1(b) of the Receivership Order provides substantial detail regarding the "dos" and "don'ts" with respect to cash related to the Property.

7. In particular, several provisions of this paragraph direct and order (a) those funds which the Receiver shall collect; and (b) the Defendant's (Borrower's) actions with respect to any cash related to the Property that may come into its possession.

8. The Receivership Order provides, in pertinent part, that the Receiver shall:

> collect (by causing the same to be paid into the Clearing Account) the rents, issues, account receivables, insurance claim proceeds, real estate tax refunds, utility deposits, and profits from the Property for any time period (but, in each of the foregoing cases, excluding any amounts in the Clearing Account or the Cash Management Account, including, but not limited to, any Reserve Funds, **and excluding any amounts** (i) received by Borrower prior to the occurrence of a Cash Sweep Period, ***(ii) received by Borrower (with Lender's permission) from the Cash Management Account during the duration of a Cash Sweep Period and used (or being used) to pay***

> ***Property related expenditures approved by the Lender*** *or **(iii) received by Borrower from the City of Philadelphia on account of refunds of Philadelphia Use and Occupancy payments to tenants as a result of the successful tax appeal of a prior year's real estate tax assessment and used (or being used) to either make refunds to tenants of such Philadelphia Use and Occupancy tax payments or (to the extent of any amounts not needed for such purpose) to pay Property related expenditures approved by the Lender*** (the amounts received by Borrower referenced in preceding clauses (i), (ii) and (iii) collectively "**Permitted Borrower Cash Receipts**"), and to collect and disburse security deposits.*

(Receivership Order, Section 1(b)) (emphasis added); Svorcek Aff., ¶ 6, Ex. A).

9. The Receiver is essentially charged with collecting all monies related to the Property except for those amounts which fall under the specific criteria set forth after the "excluding any amounts" clause.

10. In 2023, the Receiver (a) identified in Defendant's April 2023 financial statements a deposit account which had a balance of $140,219.14 (the "Cash Balance"); and (b) became aware of a refund of Philadelphia Use and Occupancy taxes in the amount of $747,883.20 (the "Tax Refund"). (Svorcek Aff., ¶ 8).

11. By correspondence dated October 18, 2023 (the "October 2023 Letter"), the Receiver (through counsel) informed the Defendant and its counsel that the Receiver was aware of the Cash Balance and the Tax Refund, and requested an accounting to ensure compliance with the Receivership Order. (Svorcek Aff., ¶ 12, Ex. B).

12. The Receiver's concern was that some or all of the Cash Balance and the Tax Refund were diverted away from their permitted uses in violation of the Receivership Order. (Svorcek Aff., ¶ 11).

13. By email dated August 14, 2024, the Defendant's counsel responded to the October 2023 Letter, explaining that: (a) the Cash Balance was used in part for Property operating expenses (allegedly in compliance with the Receivership Order), with the remaining

$65,544.23 being disbursed to the Defendant; and (b) $486,469.01 of the Tax Refund was used for Property operating expenses, with the remaining $262,070.82 being disbursed to the Defendant and then used to pay affiliate management fees to Nightingale Realty LLC and Nitesky Management LLC.  (Svorcek Aff., ¶ 13, Ex. C).

14. By correspondence dated May 23, 2025 (the "May 2025 Letter"), the Receiver (through counsel) reiterated to counsel for the Defendant that (a) at least $65,544.23 of the Cash Balance was diverted to Defendant in violation of the Receivership Order, as these funds were not shown to be used for Lender-approved Property expenses as required under the Receivership Order; and (b) the entire Tax Refund should have been used to make refunds to the tenants of the Property, as the Receiver was unaware of any circumstances which would have made such refunds "not needed."  (Svorcek Aff. ¶¶ 14-15).  The Receiver also demanded in the May 2025 Letter the immediate turnover of at least $813,427.43 (the "Subject Funds") and advised the Defendant that the Receiver would pursue a contempt motion if the Defendant failed to comply.  (Svorcek Aff. Svorcek Aff. ¶ 16, Ex. D).

**III.   ARGUMENT**

15. "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911).

16. The Court has "inherent power" to police litigant misconduct and impose sanctions on those who abuse the judicial process. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *see also Cardionet, LLC v. Mednet Healthcare Techs., Inc.,* 146 F. Supp. 3d 671, 682 (E.D. Pa. 2015) (holding that "District courts 'have inherent power to enforce compliance with their lawful orders through civil contempt.'").

17. "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *John T. v. Del. County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (cleaned up); *Cardionet, LLC*, 146 F. Supp. 3d 671 (holding same); *In re Byju's Alpha, Inc.*, No. 24-10140 (JTD), 2025 WL 947725 (D. Del. Mar. 28, 2025) (holding same). These "elements must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." *John T.*, 318 F.3d at 552. "[W]illfulness is not a necessary element of civil contempt," however, so even "good faith is not a defense." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (cleaned up).

18. In imposing sanctions, the court "must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

19. Attorney fees incurred in connection with contempt proceedings are recoverable to restore the injured party to the position it would have been had the contemnor complied with the court order. *Cardionet, LLC*, 146 F. Supp. 3d at 692.

20. Courts in the Third Circuit have held that funds owed to a receiver but diverted in contradiction to a court order must be reimbursed. *See Wilmington Tr., Nat'l Ass'n as Tr. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2019-SB6 v. Bergen Lofts LLC*, No. CV2111674KMJBC, 2022 WL 3013084 (D.N.J. July 29, 2022) (court held that when property management company affiliated with contemnor retained a "management fee[,]" the property management company had to reimburse the fees to the Receiver.); *In re Fifth Third Bank*, No. MISC.A. 10-0353, 2011 WL

1676296 (W.D. Pa. May 2, 2011) (court required return of collateral removed from property back to property in control of Receiver).

21. *United States v. Baker Funeral Home, Ltd.*, 196 F. Supp. 3d 530 (E.D. Pa. 2016) ("a federal court had the power to punish contemnors by fine or imprisonment at its discretion.") (internal quotation marks omitted).

22. *Shmuely v. Transdermal Specialties, Inc.*, No. 17-CV-01684-RAL, 2019 WL 3002942 (E.D. Pa. July 10, 2019) (awarding damages, attorney fees, and a sanction of $500 per day for each day damages and attorney fees are not paid in full when defendant refused to pay the settlement amount under a settlement agreement); *see also Pasternack v. Klein*, No. CV 14-2275, 2017 WL 1508970 (E.D. Pa. Apr. 27, 2017) (while the Third Circuit has held that courts ought to use the least coercive sanction reasonable calculated to win compliance with orders, "[a] fine of between $100 and $1,000 per day" is often applied by courts.) (collecting cases).

23. Here, the analysis is simple. There is no dispute that the Receivership Order is a valid court order and that the Defendant and its property management affiliates and respective officers/employees were aware of it. In fact, the Receivership Order was entered on consent of the parties.

24. The Defendant's treatment and retention of a substantial portion of the Cash Balance and misapplication/retention of all of the Tax Refund are contrary to the express terms of the Receivership Order. The Receiver has called this to the attention of the Defendant and its counsel repeatedly, and the Defendant refuses turnover the subject funds.

25. These violations of the Receivership Order were no accident; the Defendant and its property management affiliates took action with knowledge and intent, as a substantial portion of the proceeds improperly diverted away from the Receiver were paid *to* Defendant's property management affiliates.

26. The Defendant and its affiliates which received the Subject Funds should be held in contempt for their conduct. The Defendant and its affiliates should be compelled to return the subject funds, pay Receiver's attorneys' fees and be subject to a fine for any failure to timely perform the foregoing.

**IV.     CONCLUSION**

27. Defendant's (and its affiliates') conduct in this case amounts to indifference of a final Federal Court order.

28. In the case of the Cash Balance, the Receivership Order clearly does not permit the Defendant to simply retain cash derived from the Property for its own use.

29. The Receivership Order also requires _all_ of the Tax Refund to be refunded to tenants of the Property, except "to the extent of any amounts not needed for such purpose." The Receiver is not aware of any circumstances which would satisfy this exception. All of the Tax Refund should have been used to provide refunds to the Property's tenants; the Defendant has simply retained the tenants' refunds in patent defiance of the Receivership Order.

30. There is no dispute – the Receivership Order constitutes a valid "order." Defendant and its property management affiliates had knowledge of the Receivership Order and disobeyed the Order first by diverting funds in violation thereof and second by failing to comply with subsequent demands for turnover.

31. As a result of these violations, the Court should hold Defendant, Nightingale Realty LLC and Nitesky Management LLC, and any officer or employee of the foregoing limited liability companies who actively participated in diverting the Subject Funds away from the Receiver in violation of the Receivership Order (collectively, the "Contempt Parties"), in civil contempt, compel the Contempt Parties' compliance, and impose appropriate sanctions for failure to comply, by ordering the following relief:

    a. The Contempt Parties, jointly and severally, shall remit no less than the Subject Funds ($813,427.43) to the Receiver within five (5) days of entry of an Order granting this Motion (the "Turnover Deadline");

    b. The Contempt Parties are hereby directed, no later than the Turnover Date, to reimburse the Receiver for all attorneys' fees which were incurred in connection with the Defendant's failure to properly treat the Subject Funds in accordance with the Receivership Order;

    c. A fine shall be imposed upon the Contempt Parties, jointly and severally, in the amount of $1,000 per day for each day after the Turnover Deadline that the Subject Funds and applicable attorneys' fees have not been paid to the Receiver, which amount shall be paid to the Receiver as damages;

    d. If the Subject Funds and applicable attorneys' fees are not paid to the Receiver by the Turnover Deadline, the Receiver shall be authorized to apply to the Court (i) for additional attorneys' fees incurred in connection with future efforts and proceedings related to the Contempt Parties; and (ii) imprisonment of any or all of the Contempt Parties; and

    e. Ordering such other and further relief as the Court deems appropriate.

32. Prior to filing, the Receiver (through counsel) conferred with Defendant through counsel regarding the contents of this motion via email.

WHEREFORE, for the reasons set forth hereinabove, the Receiver requests that this Court grant its Motion and hold Defendant, Nightingale Realty LLC and Nitesky Management LLC, and any officer and/or employee of the foregoing who actively participated in diverting the Subject Funds away from the Receiver in violation of the Receivership Order in civil contempt of court.

                                          Respectfully submitted,

Dated: July 17, 2025                        **BUCHANAN INGERSOLL & ROONEY PC**

                                          */s/ Mark Pfeiffer*
                                          Mark Pfeiffer (PA ID 76245)
                                          Two Liberty Place
                                          50 S. 16th Street, Ste. 3200
                                          Philadelphia, PA 19102
                                          Tel:  (215 665-8700
                                          Fax:  (215) 665-8760
                                          Email:  mark.pfeiffer@bipc.com

                                          *Attorneys for Movant*