**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2020-MKST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-MKST, THE RR INTEREST OWNER AND THE FUTURE ADVANCE LENDER,** *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | **NO. 23-0146** |
| **NG 1500 MARKET ST. LLC,** *Defendant.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J. AUGUST 17, 2026

## MEMORANDUM OPINION

### INTRODUCTION

On January 13, 2023, Plaintiff Wells Fargo Bank, ("Plaintiff" or "Lender"), filed this action against Defendant NG 1500 Market St. LLC, ("Defendant" or "Borrower"), seeking to foreclose on a loan Defendant allegedly defaulted. (ECF 1). Upon consent of the parties and pursuant to this Court's Order, (the "Receivership Order"), CBRE, Inc., ("Receiver" or "CBRE"), was appointed as the Receiver of certain real property located at 1500 Market Street, Philadelphia, Pennsylvania, 19102, the improvements thereto, (the "Real Property"), and the personal property (excluding cash) owned by Defendant, (the "Personal Property"), (collectively, the "Property"). (ECF 20).

Pursuant to the Receivership Order, CBRE was given the authority to sell the Property with the approval of this Court. (*See* ECF 20 at p. 5, 10; ECF 43). On May 1, 2026, CBRE filed motions under seal seeking an Order approving the private sale of the Property and granting related relief, (the "Sale Confirmation Motion"), (ECF 75), and an expedited hearing on said motion, (the "Expedited Hearing Motion"), (ECF 74). In response to CBRE's sealed motions, Universal Group Company Inc., ("Universal"), a third-party that had unsuccessfully been in negotiations with CBRE regarding the purchase/sale of the Property, filed an omnibus motion to, *inter alia*, intervene and unseal CBRE's motions. (*See* ECF 82). On May 26, 2026, CBRE filed unsealed versions of the sealed motions in the public domain. (ECF 91, 92).

After considering and denying Universal's omnibus motion, (ECF 102, 103), this Court granted CBRE's Expedited Hearing Motion, (ECF 104), scheduling the hearing for August 12, 2026, and ordered that notice be provided to interested parties of the hearing. At the August 12, 2026 hearing, the Court heard argument from CBRE, Universal, and the buyer of the Property, Center Square[1] on CBRE's Sale Confirmation Motion. The issues have been fully briefed and are ripe for disposition. For the reasons set forth herein, CBRE's Sale Confirmation Motion is granted.

**FACTUAL BACKGROUND**

In rendering this Opinion, this Court has carefully reviewed the CBRE's submissions and filings, (ECF 92), including affidavits from the Receiver and the Lender, the evidentiary record,

[1] In its Memorandum Opinion denying Universal's omnibus motion, this Court indicated that an entity know as PMC Property Group engaged CBRE in the initial bidding process for the Property and entered into a purchase and sale agreement with CBRE. While it remains undisputed that PMC Property Group submitted the highest bids, the final buyer for the Property was a collection of entities related to PMC Property Group; *to wit*: Centre Square East Upper, LLC; Centre Square East Lower, LLC; Centre Square West Upper, LLC; Centre Square West Lower, LLC; and Centre Square Base, LLC, each a Pennsylvania limited liability company, as tenants-in-common, (collectively, "Centre Square"). (*See* Purchase and Sale Agreement, ECF 92-1 at p. 278).

the argument from the August 12, 2026 hearing, and Universal's submissions, to the extent those were relevant:

### *I. Initiation of Case*

On January 13, 2023, Plaintiff Wells Fargo filed a complaint against Defendant NG 1500 Market St. LLC, to foreclose on certain real property located at 1500 Market Street, Philadelphia, Pennsylvania 19102, and the improvements therein, (the "Real Property"), and the personal property (excluding cash) owned by Defendant, (the "Personal Property"), (collectively, the "Property"). (ECF 1). The Property is a 36 to 43-story (East and West towers respectively) property, which serves as collateral for a commercial mortgage loan in an original principal amount of $388,000,000.00, (the "Loan"), made to Defendant and held by Plaintiff, as Trustee, for the benefit of registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2020-MKST Commercial Mortgage Pass-Through Certificates, Series 2020-MKST, the RR Interest Owner and the Future Advance Lender. (ECF 92-3 at p. 2). With the parties' consent, on April 14, 2023, this Court issued a Receivership Order on appointing CBRE, Inc., (the "Receiver" or "CBRE"), as the Receiver for the Property. (ECF 20). Pursuant to the Receivership Order, CBRE was authorized, *inter alia*, to sell the Property with the prior approval of this Court.[2] (*See* ECF 20 at p. 5, 10; ECF 43).

---

[2] The initial Receivership Order vested CBRE with:

(1) . . . the power and authority to . . . and without further approval of the Court:

. . . .

> (n) if directed by the Lender, engage a sales broker and sell the Property (in each case with the prior approval of the Court and on such terms as may be set out in a separate and subsequent order of the Court, it being understood that nothing in this Order shall constitute a waiver of Borrower's right to raise objections to any motion seeking Court approval of any such separate and subsequent order)[.]

(ECF 20 at p. 5, 10) (hereinafter, "Subsection (1)(n)"). Pursuant to an Order entered on February 18, 2025, (ECF 43), Subsection (1)(n) of the Receivership Order was revised as follows:

> (n) if directed by the Lender, (i) engage a sales broker (provided (A) that such sales broker shall provide all offering materials to the Borrower and (B) that the Borrower (and any affiliates of the Borrower and its direct and indirect partners) shall have the right to make offers for the purchase of the Property (which may take the form of a discounted payoff of the Loan) and participate in any bidding process) and (ii) with the prior approval of the Court and on such terms as may be set out in a separate and subsequent order of the Court (it being understood that nothing in this Order shall constitute a waiver of Borrower's right

## *II. CBRE's Efforts to Market the Property*

Over a ten-month period, CBRE, acting as a real estate broker, marketed the Property by, *inter alia*: sending 3,285 targeted e-mails to prospective buyers identified as strong candidates to acquire the Property, of which 1,983 recipients viewed CBRE's marketing e-mail; writing articles in local newspapers including the *Philadelphia Inquirer*, *Philadelphia Business Journal* and other national real estate periodicals regarding the sale of the Property; executing ninety-six prospective purchasers confidentiality agreements to access additional information concerning the Property; and coordinating and conducting tours of the Property with twenty-one distinct interested buyers. (ECF 98 at p. 5; ECF 92-1 at ¶ 21). CBRE obtained authorized and approved appraisals from three appraisers for the purpose of determining the appraised value of the Property. (ECF 92-3 at p. 3). Newmark Valuation & Advisory, LLC, Cushman & Wakefield Regional, LLC, and Pasquerella Real Estate LLC, (collectively, the "Appraisers"), appraised the Property at $92,000,000, $70,500,000, and $70,500,000, respectively. (ECF 92-1 at p. 4).

As a result of its marketing efforts, CBRE received nine first round bids, six second round bids, and three best and the final bids for the Property from: CSC 1500 Market Prop Co, LLC, ("CSC"); Universal; and PMC Property Group. (ECF 98 at p. 6; ECF 92-1 at ¶ 23-25). On February 17, 2026, the Receiver executed a purchase and sale agreement, (the "PSA"), where CBRE agreed to sell the Property to Centre Square for $70,000,000, and Centre Square agreed to remit earnest money in the total amount of $5,000,000. (ECF 92-1 at ¶ 26; ECF 92-3 at p. 3; ECF 92-1, Exh. E).

## *III. CBRE's Motions for Private Sale of the Property*

On May 1, 2026, CBRE filed three separate motions under seal: (1) a motion to file documents under seal, (the "Sealing Motion"), (ECF 73); (2) a motion for expedited hearing on Receiver's motion to approve the private sale of the receivership property and granting related relief, (the "Expedited Hearing Motion"), (ECF 74); and (3) a motion for an Order approving the private sale of receivership property and granting related relief, (the "Sale Confirmation Motion"), (ECF 75). CBRE also published in the *Philadelphia Inquirer* and *Philadelphia Business Journal* a "Notice of Private Sale of Real and Personal Property," (ECF 76 at p. 2). The notice provided:

---

to raise objections to any motion seeking Court approval of any such separate and subsequent order) sell the Property[.]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
Case No.: 2:23-cv-00146-NIQA

WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2020-MKST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-MKST, THE RR INTEREST OWNER AND THE FUTURE ADVANCE LENDER,
Plaintiff,
vs
NG 1500 MARKET ST. LLC,
Defendant.

**NOTICE OF PRIVATE SALE OF REAL AND PERSONAL PROPERTY**

PLEASE TAKE NOTICE THAT CBRE, Inc., the court-appointed receiver (the "**Receiver**"), has entered into an agreement for the private sale of the property located at 1500 Market Street, Philadelphia, Pennsylvania 19102, including all real and personal property associated therewith, and improvements located thereon (all such real and personal property being referred to herein collectively as the "**Property**").

**All competing bids are due by May 12, 2026. Any person or entity wishing to submit a competing bid for the Property must submit a written bid in an amount of not less than $77,000,000.00. All competing bids must be submitted to the Receiver's counsel: Mark Pfeiffer, Two Liberty Place, 50 S. 16th Street, Ste. 3200, Philadelphia, PA 19102, mark.pfeiffer@bipc.com. The Receiver reserves the right to accept any bid or to reject any and all bids that it deems not to be in the best interest of the receivership estate.**

PLEASE TAKE FURTHER NOTICE THAT the Receiver will appear before the Honorable Judge Nitza I. Quinones Alejandro, in the United States District Court for the Eastern District of Pennsylvania, located at 601 Market Street, Courtroom 8-B, Philadelphia, Pennsylvania 19106, and will seek confirmation of the private sale of the Property pursuant to written motion (the "**Sale Confirmation Motion**").

PLEASE TAKE FURTHER NOTICE THAT all sales will be free and clear of all liens, claims, encumbrances, rights of redemption, and other interests pursuant to the Court's entry of an order confirming and approving the final sale of the Property. All sales will be "AS IS" and "WHERE IS AND WITH ALL FAULTS" with no representations or warranties of any type.

Dated: May 1, 2026.

CBRE sent a copy of the notice to CSC and to Universal. (ECF 98 at p. 8; ECF 89).

On May 11, 2026, CSC filed a "Letter of Intent to Acquire the Property," offering to purchase the Property for $80,000,000 on terms set forth in the Letter of Intent, (ECF 79), and CBRE sent Universal the executed PSA and a redline of CSC's proposed purchase and sale agreement, (ECF 82-4 at ¶ 18). Upon receipt of the PSA and CSC's bid, Universal filed the omnibus motion on May 12, 2026, (ECF 82). On May 19, 2026, CBRE filed a status report regarding the sale/purchase, indicating that it would be withdrawing its Sealing Motion, (ECF 89), and, on May 26, 2026, CBRE filed unsealed copies of its Expedited Hearing Motion and the underlying Sale Confirmation Motion. (ECF 91, 92). On July 14, 2026, CBRE filed a second status report regarding the sale/purchase, indicating that CBRE terminated discussion with CSC after CSC failed to make a $5,000,000 deposit, and was no longer a competing bidder for the Property. (ECF 100 at ¶ 6). The PSA is the subject of the Sale Confirmation Motion. (*Id.* at ¶ 7).

On July 27, 2026, this Court issued a Memorandum Opinion and Order denying Universal's omnibus motion. (ECF 102, 103). The following day, this Court appointed the Appraisers, (ECF 105), and granted CBRE's Expedited Hearing Motion, requiring CBRE to publish the terms of the private sale in the *Philadelphia Inquirer*, (the "Sale Notice"), (ECF 104). CBRE complied with the Order, and issued the following Sale Notice:

COPY OF ADVERTISEMENT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**Case No.: 2:23-cv-00146-NIQA**

WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2020-MKST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-MKST, THE RR INTEREST OWNER AND THE FUTURE ADVANCE LENDER,
Plaintiff,
vs
NG 1500 MARKET ST. LLC,
Defendant.

**NOTICE OF PRIVATE SALE OF REAL AND PERSONAL PROPERTY**

PLEASE TAKE NOTICE THAT the court-appointed receiver CBRE, Inc. ("**Receiver**") has entered into an agreement for the private sale of real and personal property located at 1500 Market Street, Philadelphia, Pennsylvania 19102 (collectively, the "**Property**").

All competing bids are due by August 10, 2026. Anyone wishing to submit a competing bid for the Property must submit a written bid in an amount of not less than $77,000,000.00. All competing bids must be submitted to the Receiver's counsel: Buchanan Ingersoll & Rooney PC, Attn: Chris Schueller, Two Liberty Place, 50 S. 16th Street, Ste. 3200, Philadelphia, PA 19102, **christopher.schueller@bipc.com**. The Receiver reserves the right to accept or reject any competing bid.

PLEASE TAKE FURTHER NOTICE THAT the Receiver will appear on August 12, 2026 at 1:00 p.m. before the Honorable Judge Nitza I. Quinones Alejandro, in the United States District Court for the Eastern District of Pennsylvania, located at 601 Market Street, Courtroom 8-B, Philadelphia, Pennsylvania 19106, and will seek confirmation of the private sale of the Property.

Dated: July 31, 2026.

**BUCHANAN INGERSOLL & ROONEY PC**

By: /s/ Christopher P. Schueller
Christopher P. Schueller
Two Liberty Place
50 S. 16th Street, Ste. 3200
Philadelphia, PA 19102
Tel: (215) 665-8700
Attorneys for the Receiver

CBRE filed notices with this Court confirming the publication of the terms and the service of the terms on, *inter alia*, the following interested parties: Plaintiff; Universal; Centre Square; CSC; and Defendant. (ECF 108, 109). The hearing on the Sale Confirmation Hearing was held August 12, 2026, with CBRE arguing in favor of its motion, Universal arguing against the motion,[3] and Center Square

[3] Even though this Court denied Universal's intervention, and Universal had not offered any bid for the Property, it was permitted to make argument at the hearing.

providing no stance on the motion.[4] (ECF 114). Prior to the hearing, Universal filed objections to the private sale, (ECF 112), and CBRE filed a certification stating that no new purchase offers had been made since publication of the Sale Notice, (ECF 113).

**LEGAL STANDARD**

CBRE's private sale of the Property is governed by 28 U.S.C. § 2001(b), which provides the following:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

"[T]he statute . . . includes mandatory language stating that (1) the court 'shall appoint' three appraisers, (2) '[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value,' (3) the sale 'shall be published' in newspapers at least ten days before confirmation, and (4) the sale 'shall not be confirmed' if a bona fide offer guaranteeing 'at least a

4 In its second status report, CBRE stated that:

> On July 13, 2026, Centre Square notified the Plaintiff and the Receiver that Centre Square terminated the Centre Square Agreement. However, there is no legal or factual basis for Centre Square to terminate the agreement. Therefore, the Court should approve the sale to Centre Square. If Centre Square fails to close on the sale, Centre Square will forfeit its deposit to the Receiver for the benefit of the receivership estate.

(ECF 100 at ¶ 13). At the hearing, Center Square confirmed its position that the PSA had been legitimately terminated, but did not oppose the Sale Confirmation Motion.

10 per centum increase' is made." *Huntington Nat. Bank v. Najero, Inc.*, 2014 WL 5473054, at *1 (E.D. Mich. Oct. 27, 2014) (quoting 28 U.S.C. § 2001(b)). A court must also determine whether "the best interests of the estate will be conserved" by the private sale. 28 U.S.C. § 2001(b)

**DISCUSSION**

As noted, CBRE seeks an Order approving the private sale of the Property between itself and Centre Square. Accordingly, this Court must determine whether the requirements of 28 U.S.C. § 2001(b), noted above, have been met.

***I. Appointment of three disinterested appraisers***

"Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities." 28 U.S.C. § 2001(b). Courts have interpreted this language to permit the receiver to submit valuations from appraisers to the reviewing court. *See, e.g., Huntington Nat'l Bank v. Sheridan Propco LLC*, 2026 WL 458605, at *10 (E.D. Mich. Feb. 18, 2026); *Sec. & Exch. Comm'n v. Fujinaga,* 2017 WL 4369467, at *1 (D. Nev. Oct. 2, 2017) ("The court held that 'the valuations submitted by the receiver can constitute appraisals for the purpose of satisfying the statutory requirements.'"); *SEC. v. T-Bar Res.*, LLC, 07-1994, 2008 WL 4790987, at *3 (N.D. Tex. Oct. 28, 2008).

Here, the Receiver submitted the names and the appraisal reports from three independent appraisers. In appointing the Appraisers pursuant to a July 28, 2026 Order, (ECF 105), this Court reviewed the submission of each appraiser, their curriculum vitae, the appraisal reports, and, upon determining that the Appraisers were disinterested, capable persons and that their appraisals reports were done pursuant to recognized appraisal standards, accepted the appraisers and their independent reports. As such, the first requirement under 28 U.S.C. § 2001(b) is satisfied.

### *II. Private sale price greater than two-thirds the appraisal value*

28 U.S.C. § 2001(b) requires that "[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value." The appraisal value can be found by averaging three appraisals reports provided. Newmark Valuation & Advisory, LLC, Cushman & Wakefield Regional, LLC, and Pasquerella Real Estate LLC, (collectively, the "Appraisers"), appraised the Property at $92,000,000, $70,500,000, and $70,500,000, respectively. (ECF 92-1 at p. 4). Calculating the average of the appraisals' values, this Court calculated that amount as $77,666,666.67. (($70,500,000+$70,500,000+$92,000,000)/3=$77,666,666.67). This Court further calculated that two-thirds of the appraised value is $51,777,777.78. (($77,666,666.67)*2/3=$51,777,777.78). The sale price agreed to in the PSA between CBRE and CBRE is $70,000,000, which is greater than the two-third requirement of the statute.; *to wit*: $51,777,777.78. Thus, the second requirement under 28 U.S.C. § 2001(b) is satisfied.

### *III. Publication of private sale terms in newspaper at least ten days before confirmation of private sale*

The third requirement of 28 U.S.C. § 2001(b) is that "[b]efore confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation." Pursuant to the July 28, 2026 Order, this Court directed CBRE to publish the hearing date and terms of the private sale in the *Philadelphia Inquirer*, which is a newspaper of general circulation. (ECF 104). CBRE published the terms of the sale on July 31, 2026 in the *Philadelphia Inquirer*, more than ten days before the August 12, 2026 hearing, and provided this Court with a copy of said publication. (ECF 109). Notably, in its filed objections and at the hearing, Universal argues that CBRE failed to publish the terms of the private sale because the July 31, 2026 Sale Notice did not include, *inter alia*: the price offered in the underlying private sale; the purchaser; the consideration; the deposit; the

closing date; the finality condition; or whether the agreement now offered for confirmation is the PSA. (ECF 112 at p. 3). However, neither the statute nor the cases that Universal relies on[5] define what the "terms" or publication requirements of a private sale are. Notwithstanding, the notice indicate that all competing bids are due by August 10, 2026, in writing and for an amount not less than $77,000,000. This Court finds that, though the actual price was omitted, said omission is harmless, at best. Any interested potential buyer had sufficient information, to appear at the confirmation hearing and know that whatever bid to make would need to overcome the ten-percent threshold requirement and not be less than $77,000.000. This Cour finds that the third requirement is essentially satisfied under 28 U.S.C. § 2001(b).

***IV. Bona fide offer guaranteeing 'at least a 10 per centum increase'***

The final mandatory requirement of 28 U.S.C. § 2001(b) is that "the private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale." Here, the price offered in the private sale between CBRE and Centre Square is $70,000,000. Although CSC's bid for $80,000,000 was above the 10% threshold, it was denied by CBRE after CSC failed to provide the required $5,000,000 deposit. CSC has made no further offers. Additionally, Universal, who appears to continue to contest the sale of the Property, has never made an offer for the Property *after* CBRE and Centre Square entered into the PSA, which set forth the $70,000,000 sale price. Therefore, because no bona fide offer has been made to CBRE, under conditions prescribed by the

---

[5] *SEC v. T-Bar Resources, LLC*, 2008 WL 4790987, at *4 (N.D. Tex. Oct. 28, 2008) (finding that publication of the proposed terms of the private sale is required, but not specifying any requirements for the terms to be published); *SEC v. Amerifirst Funding, Inc.*, 2008 WL 706846, at *2 (N.D. 3 Tex. Mar. 11, 2008) (same); *Huntington National Bank v. Najero, Inc.*, 2014 WL 5473054 (E.D. Mich. Oct. 27, 2014) (same); *Huntington National Bank v. Sheridan Propco LLC*, 2026 WL 458605 (E.D. Mich. Feb. 18, 2026) (same).

Sale Notice, which guarantees at least a 10% increase over the Sale Price, the fourth, and final, mandatory requirement of 28 U.S.C. § 2001(b) is satisfied.

### *V. Best Interest of the Estate*

Once the mandatory provisions of 28 U.S.C. § 2001(b) have been met, the Court must determine whether "the best interests of the estate will be conserved" by the private sale of the Property. "Once assets have been placed in receivership, it is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Barton*, 170 F.4th 938, 944 (5th Cir. 2026) (cleaned up) (quoting *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019)) (providing the standard for evaluating whether the sale of property was in "the best interest of the estate" pursuant to 28 U.S.C. § 2001).

Here, CBRE made the following arguments in its submission and at the hearing as to the reasons why the sale would be in the best interest of the receivership estate and all parties:

a. The Receiver widely marketed the Property for sale and adhered to best business practices when selling the Property to maximize its value. The Buyer is ready, willing, and able to purchase the Property.

b. The marketing and sale efforts of the Receiver and Broker demonstrate that the sale contemplated by the PSA is equal or superior to other means of selling the Property and especially superior to a traditionally conducted foreclosure sale, which is less likely to maximize the sale value of the Property.

c. Lender is the party most affected by the sale and has not just consented to the sale of the Property under the PSA and Sale Price, and affirmatively supports the sale.

d. If the Property can be sold expeditiously, the sale will save the Receiver the burden of further carrying and administering the Property (including the expense and burden of preparing various tax returns, paying expenses, keeping records, and other actions required in a new calendar year).

e. Barring any other events, the sale of the Property should also constitute the disposition of all property subject to the receivership (excluding cash in the Receiver's possession) and will enable the Receiver to file its final report and seek the termination of the receivership estate, the distribution of cash remaining in the receivership estate, and the discharge of the Receiver.

(ECF 92-1 at pp. 8-10). Based on these facts, the affidavits of the Receiver and Lender, and the arguments of counsel, this Court finds the sale of the Property pursuant to the PSA is commercially reasonable and is in the best interest of the receivership estate, Lender, Borrower, and all other interested persons, and is therefore, approved on the terms set forth in the PSA. Furthermore, the Court finds that the sale price of $70,000,000 represents the fair market value of the Property and Centre Square has offered to pay reasonably equivalent value for the Property. Centre Square is not a successor in interest to the Borrower. The sale is approved free and clear of the lien of Lender, any subordinate lien, claim, or encumbrance, and of all rights of redemption, if any.

**CONCLUSION**

For the reasons set forth, CBRE's motion for an order approving the private sale of the Receivership Property is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.